**Michael Fuller, OSB No. 09357**
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

Lead Trial Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MADELINE KAY** *et al.* individually, and on behalf of other similarly situated customers | Case No. 3:24-cv-01440-SI |
| Plaintiffs | **PLAINTIFFS' MOTION TO REMAND ON THE BASIS OF SUBJECT MATTER JURISDICTION** |
| vs | |
| **PLAID PANTRY, INC.** *et al.* | |
| Defendants | |

**LR 7-1 CERTIFICATION**

The parties conferred by phone and email and this motion is opposed. *See* Exhibit 1.

**MOTION TO REMAND** – Page 1 of 29

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... 3

MOTION ........................................................................................... 6

FACTUAL AND PROCEDURAL BACKGROUND ................................ 7

ARGUMENT FOR REMAND ................................................................ 9

    1.  Because defendants cannot satisfy their burden to establish that plaintiffs have standing under Article III, the Court does not have subject matter jurisdiction, and plaintiffs' case must be remanded to state court ................................................................................. 9

    2.  Even if defendants could satisfy their burden to establish plaintiffs' standing under Article III, plaintiffs factually dispute defendants' CAFA jurisdiction assertions.................................. 22

CONCLUSION ..................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. W. Marine Prods.*,
    958 F.3d 1216 (9th Cir. 2020) ..................................................... 26

*ASARCO Inc. v. Kadish*,
    490 U.S. 605 (1989) ................................................................... 12

*Atkinson v. Penney Opco LLC*,
    No. 23-cv-1806-BJR, 2024 WL 3579910,
    2024 U.S. Dist. LEXIS 134571 (W.D. Wash. July 30, 2024) ...... 18

*Bernhardt v. Cnty. of L.A.*,
    279 F.3d 862 (9th Cir. 2002) ....................................................... 10

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ....................................................... 17

*Cantrell v. City of Long Beach*,
    241 F.3d 674 (9th Cir. 2001) ....................................................... 17

*Dep't of Human Servs. v. B.M.C. (In re O.R.W.)*,
    272 Or. App. 255 (2015) .............................................................. 11

*Dongqi Liu v. Veeva Sys. Inc.*,
    No. 23-cv-1784-BJR, 2024 WL 4263176,
    2024 U.S. Dist. LEXIS 171512 (W.D. Wash. Sept. 23, 2024) ..... 20

*Duran v. Sephora USA, Inc.*,
    No. 17-cv-01261-WHO,
    2017 U.S. Dist. LEXIS 128189 (N.D. Cal. Aug. 11, 2017) .......... 26

*Fernandez v. 23676-23726 Malibu Rd., Ltd. Liab. Co.*,
    74 F.4th 1061 (9th Cir. 2023) ....................................................... 9

*Graphic Commc'ns Loc. 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 636 F.3d 971 (8th Cir. 2011 ........................... 26

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ................................................ 23-25

*Kellas v. Dep't of Corr.*,
    341 Or. 471 (2006) ...................................................................... 11

*Kokkonen v. Guardian life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ..................................................................... 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................... 13

*Mirmalek v. L.A. Times Commc'ns LLC*, No. 3:24-cv-01797-CRB,
  2024 WL 2479940, 2024 U.S. Dist. LEXIS 92796
  (N.D. Cal. May 23, 2024) ........................................................... 27

*Nunley v. Cardinal Logistics Mgmt. Corp.*,
  No. ED CV 22-01255-FWS-SP, 2022 WL 5176867,
  2022 U.S. Dist. LEXIS 182820 (C.D. Cal. Oct. 5, 2022) ............. 22

*Olea v. Teichert Pipelines, Inc.*,
  No. 21-cv-03016-JST, 2023 U.S. Dist. LEXIS 170647
  (N.D. Cal. Sept. 25, 2023) ......................................................... 21

*O'Leary v. Trustedid, Inc.*,
  60 F.4th 240 (4th Cir. 2023) ...................................................... 17

*Parrish v. Everi Payments Inc.*,
  No. 2:22-cv-00511-GMN-DJA, 2023 WL 3276400,
  2023 U.S. Dist. LEXIS 78797 (D. Nev. May 4, 2023) ........... 10,13

*Polo v. Innoventions Int'l, Ltd. Liab. Co.*,
  833 F.3d 1193 (9th Cir. 2016) ...................................... 12,14-15,20

*Railey v. Pentagon Fed. Credit Union*,
  No. EDCV 22-2166 JGB (SPx), 2023 WL 3564789,
  2023 U.S. Dist. LEXIS 65286 (C.D. Cal. Apr. 13, 2023)............. 17

*Shulman v. Kaplan*,
  58 F.4th 404 (9th Cir. 2023) ...................................................... 10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................16-17,19,22

*Thornley v. Clearview AI, Inc.*,
  984 F.3d 1241 (7th Cir. 2021) ............................................ 12,18,20

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................11,16-17,19,22

*United States v. Hays*,
  515 U.S. 737 (1995) .................................................................... 10

*Washington v. Chimei Innolux Corp.*,
  659 F.3d 842 (9th Cir. 2011)....................................................... 23

*Wildearth Guardians v. United States EPA*,
  759 F.3d 1064 (9th Cir. 2014)..................................................... 17

*Winters v. Douglas Emmett, Inc.*,
  547 F. Supp. 3d 901 (C.D. Cal. 2021) ........................................ 21

*Wittman v. Personhuballah*,
  578 U.S. 539 (2016) .................................................................... 13

*Yeh v. Twitter, Inc.*,
    No. 23-cv-01790-HSG, 2023 WL 8429799,
    2023 U.S. Dist. LEXIS 215412 (N.D. Cal. Dec. 4, 2023) ............21

**Statutes**

Class Action Fairness Act ............................................................ passim

ORS 807.750(2) ......................................................... 7,9,16,19,24

ORS 807.750(3) ........................................................................ 16

ORS 807.750(8) ............................................................... 12,18,24

28 U.S.C. § 1332(d) ............................................................ 6-7,22,26

28 U.S.C. § 1441(a) ................................................................... 22

28 U.S.C. § 1447(c) ....................................................... 6,10,14,20-21,26

**Rules**

ORCP 32 .............................................................................. 7,15

# MOTION

Under 28 U.S.C. § 1447(c), plaintiffs respectfully move for an order remanding this case to Oregon state court because it appears that this Court lacks subject matter jurisdiction for two reasons.

First, it appears that this Court lacks subject matter jurisdiction because defendants have not met their burden to establish that plaintiffs have suffered concrete injury-in-fact sufficient to confer standing under Article III, according to controlling legal precedent.

Second, it appears that this Court lacks subject matter jurisdiction because defendants have not met their burden to establish jurisdiction under 28 U.S.C. § 1332(d).

Finally, in light of defendants' choice to oppose remand while at the same time refusing to stipulate that plaintiffs have Article III standing, plaintiffs respectfully request an order requiring defendants to reimburse the attorney fees incurred briefing and arguing this motion.

## FACTUAL AND PROCEDURAL BACKGROUND

As allowed by, and in compliance with, ORCP 32 J,[1] on July 31, 2024, plaintiffs filed a Class Action Complaint for Equitable Relief (complaint) in the Circuit Court of the State of Oregon for Multnomah County (state court), related to defendants' "swiping" of plaintiffs' and the class members' driver licenses and identification cards according to defendants' common policy and routine practice of always doing so, without a statutorily permissible purpose, and defendants' storing, selling, or sharing of personal information collected from their universal "swiping" policy, in violation of ORS 807.750(2) and (3). *See* Doc. 1-1 at 1; *id*. at 8, ¶ 13.[2]

On August 29, 2024, defendants filed their Notice of Removal of Action to Federal Court (removal), asserting that this Court has subject matter jurisdiction under the Class Action Fairness Act's (CAFA's) "minimal diversity" jurisdiction requirements under 28 U.S.C. § 1332(d). Doc. 1. Specifically, defendants assert that CAFA jurisdiction applies because the amount in controversy exceeds $5,000,000, and

---

[1] ORCP 32 J provides: "An action for equitable relief brought under sections A and B of this rule may be commenced without compliance with the provisions of section H of this rule. Not less than 30 days after the commencement of an action for equitable relief, and after compliance with the provisions of section H of this rule, the class representative's complaint may be amended without leave of court to include a request for damages."

[2] Upon receiving plaintiffs' complaint, defendants contacted the media and their CEO gave an interview admitting that defendants engage in the practices alleged in the complaint due to corporate convenience. *See* Exhibit 2.

"minimal diversity" is met because, although plaintiffs and defendants are all Oregon residents and citizens, "[o]ther members of the putative class are likely residents and citizens of Oregon, in addition to Washington, California, and other states," and that they "are aware of at least one member of the putative class being a resident of Washington." *Id*. at 3-5.

In their removal, defendants do not assert that any of the plaintiffs have Article III standing, nor does the complaint include any such allegations. *See* Doc. 1; Doc. 1-1.

<center>**ARGUMENT FOR REMAND**</center>

Federal courts are of limited jurisdiction and possess only that jurisdiction which is authorized by either the Constitution or federal statute. *Kokkonen v. Guardian life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As explained below, jurisdiction in this Court is not proper in this case because defendants cannot satisfy their burden to show that plaintiffs have standing under Article III. But even if defendants could establish plaintiffs' standing and this Court were to find that it has subject matter jurisdiction under Article III, defendants have not satisfied their burden to establish each element of their CAFA jurisdictional theory with actual evidence. Accordingly, plaintiffs respectfully request remand of their putative class action alleging defendants' violations of ORS 807.750(2) and (3) to state court, where it was appropriately filed.

    1. **Because defendants cannot satisfy their burden to establish that plaintiffs have standing under Article III, the Court does not have subject matter jurisdiction, and plaintiffs' case must be remanded to state court.**

"As a fundamental tenet of the Constitution's case-or-controversy requirement, the failure to establish standing deprives the court of subject matter jurisdiction, without which a court lacks authority to adjudicate the claim." *Fernandez v. 23676-23726 Malibu Rd., Ltd. Liab. Co.*, 74 F.4th 1061, 1063 (9th Cir. 2023). "The question

of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023). In a case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).[3]

Plaintiffs opted to file and litigate their putative class action lawsuit in Oregon state court, rather than in this Court, for multiple reasons. Perhaps chief among those reasons was the concern[4] that, as the party filing and seeking relief, plaintiffs may not be able to meet

---

[3] 28 U.S.C. § 1447(c) also states: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

[4] Plaintiffs' concerns have been confirmed and furthered by defendants' failure to stipulate during conferral that plaintiffs have Article III standing, and defendants' refusal to agree not to raise plaintiffs' lack of standing in a dispositive motion or objection to class certification later in the case. *See* Exhibit 1. Defendants' position confirms that they wish to keep their options open to later argue this Court does not have subject matter jurisdiction, despite the fact that defendants themselves (albeit through prior counsel) removed the case to this Court and therefore represented to this Court that jurisdiction in this forum is proper. Defendants' position renders the early resolution of this jurisdictional issue all the more necessary, given the mandate of 28 U.S.C. § 1447(c), plaintiffs' desire to not needlessly expend valuable court or party time and resources, and because it is the Court's role to decide its jurisdiction, which it can do *sua sponte*—regardless of any stipulation of the parties. *See United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." (internal quotation marks and citation omitted)); *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868 (9th Cir. 2002) (federal courts "are required *sua sponte* to examine jurisdictional issues such as standing." (internal quotation marks and citation omitted)); *Parrish v. Everi Payments Inc.*, No. 2:22-cv-00511-GMN-DJA, 2023 WL 3276400, 2023 U.S. Dist. LEXIS 78797, at *4-6 (D. Nev. May 4, 2023) (where the defendants successfully, but imprudently, "removed this action to federal court only to move to dismiss for lack of standing," the case was remanded to state court, but the court retained jurisdiction to award the plaintiff's attorneys' fees and costs under 28 U.S.C. § 1447(c)).

their burden to show concrete injury to confer them with Article III standing in federal court, within the contours of recent and controlling Supreme Court precedent. *See*, *e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021) (holding that the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III," and that "Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." (emphasis in original)).

It is fair to say that the Supreme Court's recent interpretations of Article III standing have created significant barriers to seek redress in federal court—even where a plaintiff seeks statutory damages for violations of a federal statute expressly provided for by Congress. However, these same constitutional federal court roadblocks simply do not apply in Oregon state court, where standing and redressability are legislatively conferred through the specific statutory private cause of action. *See Kellas v. Dep't of Corr.*, 341 Or. 471, 477-79 (2006); *Dep't of Human Servs. v. B.M.C. (In re O.R.W.)*, 272 Or. App. 255, 259-60 (2015) ("Whether a plaintiff has standing depends on the specific statutory

requirements under which the plaintiff is seeking relief."); ORS 807.750(8) ("In addition to any other remedy provided by law, an individual may bring an action to recover actual damages or $1,000, whichever is greater, and to obtain equitable relief, if equitable relief is available, against an entity that swipes, stores, shares, sells or otherwise uses the individual's personal information in violation of this section."); *Polo v. Innoventions Int'l, Ltd. Liab. Co.*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal courts* have no power to adjudicate the matter. State courts are not bound by the constraints of Article *III*." (emphasis in original) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989))).

Because defendants are the parties invoking federal court jurisdiction through their removal to this Court, it is now defendants' burden—not plaintiffs'—to establish, by a preponderance of the evidence, that plaintiffs have indeed suffered a concrete injury-in-fact that confer them with Article III standing as defined by the controlling caselaw. *See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (noting that "[o]rdinarily, it is the plaintiff who bears the burden of demonstrating that the district court has subject-matter jurisdiction over her case and that it falls within "the Judicial Power" conferred in Article III," however, it is "the party that wants the federal

forum is the one that has the burden of establishing the court's authority to hear the case. As applied here, that means that [the defendant who removed the plaintiff's putative class action case from state court] must show that [the plaintiff] (as well as her co-plaintiffs) has Article III standing"); *see also Parrish v. Everi Payments Inc.*, No. 2:22-cv-00511-GMN-DJA, 2023 U.S. Dist. LEXIS 78797, at *4 (D. Nev. May 4, 2023) ("[Removing defendants, as the party asserting federal jurisdiction, bear the burden of establishing a plaintiff's Article III standing." (cleaned up)); *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016) ("[A] party invoking a federal court's jurisdiction" has the burden to demonstrate Article III standing).

More specifically, here defendants as "[t]he party invoking federal jurisdiction bear[] the burden of establishing" three elements to establish Article III standing: (1) that the plaintiff suffered an injury in fact, which is an invasion of a legally protected interest which is concrete and particularized, that (b) is actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant, rather than the result of the independent action of some third party; and (3) it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

If defendants cannot meet their burden to establish each of these Article III standing elements, then the case must be remanded to state court—not dismissed. *Polo*, 833 F.3d at 1196 ("[T]he district court generally *must* remand the case to state court, rather than dismiss it. Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal courts* have no power to adjudicate the matter.") (emphases in original); *id.* at 1197 ("[W]hen federal jurisdiction is absent from the commencement of a case, a putative class action is not properly removed—and therefore need not stay removed. This case lacked a named plaintiff with Article III standing, and therefore was not properly removed." (cleaned up)); *see also* 28 U.S.C. § 1447(c)[5] ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added)).

These legal standards and evidentiary burdens hold true regardless of the CAFA basis for removal (presuming defendants could ultimately establish each required element of their CAFA jurisdictional theory) because "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any

---

[5] 28 U.S.C. § 1447(c) also states: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

other type of removed case." *Polo*, 833 F.3d at 1196 (reversing the district court's dismissal of plaintiff's putative class action case removed to federal court by the defendant pursuant to CAFA after finding the plaintiff had not suffered concrete injury sufficient to confer Article III standing and instructing the district court to vacate the dismissal and remand to the state court where plaintiffs filed their lawsuit).

As eluded to *supra*, from plaintiffs' perspective, defendants face a steep uphill climb to establish Article III standing under these circumstances, from both a procedural and substantive standpoint. Procedurally, given plaintiffs' complaint was filed in state court under ORCP 32, it requests equitable relief only, in accordance with ORCP 32 J, and to facilitate defendants' "cure" opportunity afforded to it by ORCP 32 H and I. *See* Doc. 1-1 at 9, ¶ 18 ("This is not a class action claim for damages at this time"); *id*. at 10, ¶ 18 ("Plaintiffs seek equitable relief against defendants as requested above . . . Plaintiffs reserve the right to amend this complaint to adjust the claims and to request damages and to add claims and additional defendants, including claims for punitive damages.").

Substantively, as to their statutory claim and prospective damages, in their complaint plaintiffs allege that,

> defendants' swiping of plaintiffs' and the class members' driver licenses and identification cards according to

defendants' common policy and routine practice to always
swipe the driver licenses and identification cards of all
customers during the purchase of age-restricted goods,
regardless of age, identity, or payment method violates
ORS 807.750(2), and defendants' storing, selling, or
sharing of personal information collected from the swiping
of plaintiffs' and the class members' driver licenses and
identification cards violates ORS 807.750(3), entitling
plaintiffs and the class members to recover actual damages
or $1,000, whichever is greater, equitable relief, and
reasonable costs and attorney fees, under ORS 807.850(8).

Doc. 1-1 at 8, ¶ 13.

In *Spokeo, Inc. v. Robins*, the Supreme Court held that

Congress' [or a state legislature's] role in identifying and
elevating intangible harms does not mean that a plaintiff
automatically satisfies the injury-in-fact requirement
whenever a statute grants a person a statutory right and
purports to authorize that person to sue to vindicate that
right. Article III standing requires a concrete injury even
in the context of a statutory violation. For that reason,
Robins could not, for example, allege a bare procedural
violation, divorced from any concrete harm, and satisfy the
injury-in-fact requirement of Article III.

578 U.S. 330, 341 (2016).

Subsequently, in *TransUnion*, the Supreme Court held that

Congress [or a state legislature] may create causes of
action for plaintiffs to sue defendants who violate . . . legal
prohibitions or obligations. But under Article III, an injury
in law is not an injury in fact. Only those plaintiffs who
have been *concretely harmed* by a defendant's statutory
violation may sue that private defendant over that
violation in federal court.

594 U.S. at 427 (emphasis in original).

That plaintiffs assert a state law cause of action, rather than

violations of a federal statute, is of no meaningful difference to the

Article standing analysis. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) ("In addition to meeting the UCL's standing requirements, the plaintiffs must also satisfy the federal standing requirements under Article III."); *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (holding that a party asserting state law claims in federal court "must meet the stricter federal standing requirements of Article III"); *Railey v. Pentagon Fed. Credit Union*, No. EDCV 22-2166 JGB (SPx), 2023 WL 3564789, 2023 U.S. Dist. LEXIS 65286, at *20 (C.D. Cal. Apr. 13, 2023) (accord); *O'Leary v. Trustedid, Inc.*, 60 F.4th 240, 243 n.1 (4th Cir. 2023) (explaining that the Supreme Court's holding in *Spokeo* and *TransUnion* that "a mere statutory violation typically won't suffice as an Article III injury," applies "whether the alleged statutory violation is under federal or state law," because "[i]t would be an anomaly if a state legislature could grant plaintiff the keys to federal court based on a mere statutory violation when Congress can't").

Moreover, defendants "must establish standing with respect to each claim and form of relief" asserted by plaintiffs. *Railey*, 2023 WL 3564789, 2024 U.S. Dist. LEXIS 85406, at *21 (citing *Wildearth Guardians v. United States EPA*, 759 F.3d 1064, 1070-72 (9th Cir. 2014)). And defendants must do so based on plaintiffs' operative state court complaint, which is devoid of any allegations regarding any

Article III qualifying injury traceable to defendants' unlawful conduct that is likely to be redressed by this Court. *See Atkinson v. Penney Opco LLC*, No. 23-cv-1806-BJR, 2024 WL 3579910, 2024 U.S. Dist. LEXIS 134571, at *4 (W.D. Wash. July 30, 2024) ("Jurisdiction is based on the pleadings filed at the time of removal, so the Court must look to [the plaintiff's] . . . complaint provided to the Court with the notice of removal."). This is so because, as discussed above, Article III standing doctrine does not apply in state courts, and because, unlike in federal court, in Oregon state court standing has been legislatively conferred through, and is dictated by, the statute at issue: ORS 807.750(8). Because the plain text of ORS 807.750(8) does not contain any proof of injury beyond being subjected to a prohibited practice, plaintiffs' complaint does not, and need not, assert any relevant "concrete" harm or injury allegations within the meaning of the current Supreme Court Article II standing jurisprudence. *See Thornley, Inc.*, 984 F.3d at 1248-49 ("It is no secret to anyone that [the plaintiffs] took care in their allegations, and especially in the scope of the proposed class they would like to represent, to steer clear of federal court. But in general, plaintiffs may do this . . . they may choose to rely exclusively on state law and avoid federal-question jurisdiction. And here, they may take advantage of the fact that Illinois permits BIPA cases that allege bare statutory violations, without any further need to allege or show injury.").

Accordingly, and as a consequence of their own strategic decision to invoke this Court's jurisdiction through removal plaintiffs' putative class action from the appropriate state court forum, defendants' must now establish, *inter alia*, that plaintiffs suffered concrete and particularized injuries as a result of defendants' violations of ORS 807.750(2) and (3). And defendants cannot do so by pointing to the "bare procedural," statutory violations plaintiffs allege in their complaint, as that is all that was required of plaintiffs to adequately plead and obtain relief in state court under the Oregon statute at issue. *Spoke*o, 578 U.S. at 341. But in this federal forum, "under Article III, an injury in law [a statutory violation] is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427 (emphasis in original).

In *TransUnion*, the Supreme Court flatly held: "No concrete harm, no standing." *Id*. at 417. The court then recognized two types of "tangible" harms that "readily qualify as concrete injuries under Article III," namely "physical harms and monetary harms." *Id*. at 425 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). Here, because there are no allegations or facts indicating that defendants' violations of ORS 807.750 caused plaintiffs any monetary or physical

injuries, defendants must show that their statutory violations caused plaintiffs some form of "intangible" injuries recognized by the Supreme Court as sufficiently concrete and particularized under Article III. *Id.*

In this context, it is neither plaintiffs' burden to establish their own standing or the Court's subject matter jurisdiction, nor to show the converse: that they do not have standing and this Court does not have subject matter jurisdiction. For the purpose of this motion, plaintiffs merely emphasize that their reading of the recent controlling Supreme Court opinions cited above, and the circuit and district court rulings following these opinions, strongly suggest that establishing plaintiffs' Article III standing will be an arduous burden for defendants to satisfy in these circumstances, and because "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Polo*, 833 F.3d at 1196-97; *Thornley*, 984 F.3d at 1248 ("Our job is to decide whether [the plaintiff] and her co-plaintiffs have Article III standing to pursue the case they have presented in their complaint. We have concluded that they do not: they have described only a general, regulatory violation, not something that is particularized to them and concrete."); *Dongqi Liu v. Veeva Sys. Inc.*, No. 23-cv-1784-BJR, 2024 WL 4263176, 2024 U.S. Dist. LEXIS 171512, at *6-7 (W.D. Wash. Sept. 23, 2024) (finding that because defendant, as the "party invoking federal jurisdiction," had "not met its burden of

demonstrating a case or controversy under Article III standing at this stage of litigation," and the plaintiff's "lack of Article III standing implicates the Court's subject matter jurisdiction," the case was "remanded to King County Superior Court pursuant to 28 U.S.C. § 1447(c)," and there was no need to "address the arguments relating to diversity jurisdiction or jurisdiction under CAFA"); *Winters v. Douglas Emmett, Inc.*, 547 F. Supp. 3d 901, 908 (C.D. Cal. 2021) (because plaintiff's case "is merely one to vindicate procedural violations of applicable credit reporting laws," any such "alleged harm does not establish Article III standing" and "the Court lacks subject matter jurisdiction over this action and must remand it to the California Superior Court in Los Angeles." (internal quotation marks and citation omitted)); *Olea v. Teichert Pipelines, Inc.*, No. 21-cv-03016-JST, 2023 U.S. Dist. LEXIS 170647, at *6 (N.D. Cal. Sept. 25, 2023) (because the plaintiff could not establish that "he suffered any other injury from [the defendant's] alleged violation of the standalone [Fair Credit Reporting Act] disclosure requirement, he failed "to show he has suffered a concrete injury-in-fact sufficient to confer standing," and, therefore, the case was remanded, so that plaintiff could attempt to "vindicate his claims in state court," where federal court Article III standing principles do not apply); *Yeh v. Twitter, Inc.*, No. 23-cv-01790-HSG, 2023 WL 8429799, 2023 U.S. Dist. LEXIS 215412, at *7 (N.D. Cal. Dec.

4, 2023) (although there was no dispute "that statutory standing exists under CAFA," because the defendant failed to meet its burden of establishing the plaintiff's Article III standing, plaintiff's case was remanded to state court); *Nunley v. Cardinal Logistics Mgmt. Corp.*, No. ED CV 22-01255-FWS-SP, 2022 WL 5176867, 2022 U.S. Dist. LEXIS 182820, at *17-18 (C.D. Cal. Oct. 5, 2022) (granting the plaintiff's motion to remand where the plaintiffs' claim alleged that the defendant did "not comply with the technical authorization and disclosure requirements of the FCRA," because that was the "the kind of 'bare procedural injury' of [a statute] contemplated by *TransUnion* and *Spokeo*" that is insufficiently concrete to confer Article III standing).

### 2. Even if defendants could satisfy their burden to establish plaintiffs' standing under Article III, plaintiffs factually dispute defendants' CAFA jurisdiction assertions.

A state court defendant can remove a civil action to federal court if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). CAFA provides such federal subject-matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B). "The burden of establishing removal jurisdiction, even in

CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011).

As the Ninth Circuit has recently explained,

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one. But the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal. Yet, when the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies. Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure.

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015) (citations omitted).

Here, plaintiffs affirmatively and factually challenge each element of defendants' CAFA jurisdictional assertions in their removal. As to class membership, defendants do not even bother to actually assert that there are at least 100 putative class members. But even if defendants' paraphrased reference to plaintiffs' complaint eluding to "thousands of people" in the class suffices as "plausible assertion" in a

remand notice, plaintiffs now challenge the ambiguity of that number in these circumstances, and request defendants proffer "real evidence" of class membership in order to satisfy its burden that this threshold requirement for CAFA jurisdiction is met. Doc. 1 at 4, ¶ 9; *Ibarra*, 775 F.3d 1193 at 1198.

As to the amount-in-controversy element, plaintiffs' challenge defendants' assertion that "the record establishes that the aggregate amount in controversy exceeds the value of $5,000,000." *Id*. at ¶ 14. There is no "record" establishing any amount in controversy. Instead, defendants broadly speculate about damages based on their statement that they have more than 100 convenience stores in Oregon, that ORS 807.750(8) provides $1,000 per violation of ORS 807.750(2) and (3) and potential trebling by the court, and the allegations in the complaint that defendants violated the statute routinely, as a matter of company policy. Doc. 1 at 4, ¶¶ 14-20.

Here again, although these unsupported assumptions may pass muster as a plausible assertion for a remand notice, it is woefully insufficient as a damages calculation to meet defendants' burden after being challenged by plaintiffs. At a minimum, in order to provide a meaningful damages calculation, defendants must be required to provide "real evidence," comprising a good faith estimate of customers who had their driver licenses "swiped," without regard to a qualifying

purpose, during the class period, in accordance with defendants' universal policy to do so. Defendants "cannot establish [CAFA] removal jurisdiction by mere speculation and conjecture" and although "a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1197-99.

Although there is no dispute that both defendants and all three plaintiffs are Oregon citizens, defendants speculate that CAFA's minimal diversity is satisfied because it is "likely" some of the class members are citizens of the several states bordering Oregon and they apparently "are aware of at least one member of the putative class being a resident of Washington." Doc. 1 at 4, ¶¶ 10-14. Plaintiffs expressly challenge defendants' unsupported conjecture and request the identity of this Washington citizen that defendants claim is a member of the putative class. The identity of this individual and their citizenship information is important not only to ensure that this requisite element is met with real evidence, but also as important initial discovery into defendants' method of ascertaining this alleged class member, and other putative class members. This would be a critical starting point for jurisdictional given the potential exceptions

to CAFA jurisdiction that may be[6] asserted by plaintiffs. *See* 28 U.S.C. § 1332(d)(3) & (4); *see also Adams v. W. Marine Prods.*, 958 F.3d 1216, 1220-21 (9th Cir. 2020) (detailing the mandatory "local controversy" exception and the mandatory and discretionary "home state" exceptions to CAFA).

Although defendants bear the burden to establish subject matter jurisdiction on removal, it is plaintiffs' burden to establish any exception to CAFA jurisdiction. *Id.* at 1221. Beyond the class member citizenship criterion, the other required factors needed to establish the mandatory and discretionary CAFA jurisdictional exceptions are readily satisfied. Plaintiffs do not yet have sufficient evidence to support the class member citizenship element of these exceptions—that at least 1/3 or 2/3 of putative class members are Oregon citizens. Nonetheless, the likelihood that this threshold percentage of putative class members are Oregon citizens is just as "likely" as defendants' assumptions that some class members are citizens of states bordering Oregon, given that *all* of defendants' violations of occurred within Oregon at defendants' more than 100 stores within Oregon. Defendants are in control of direct and indirect evidence and information regarding

---

[6] As with subject matter jurisdiction, 28 U.S.C. § 1447(c)'s 30-day time limitation does not apply to the CAFA exceptions, because they are not removal "defects." *See Duran v. Sephora USA, Inc.*, No. 17-cv-01261-WHO, 2017 U.S. Dist. LEXIS 128189, at *10 (N.D. Cal. Aug. 11, 2017); *Graphic Comm'ns Loc. 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 636 F.3d 971, 974-76 (8th Cir. 2011).

the identities and citizenship data of their customers whom they either swiped the driver licenses and identification cards of improperly, or improperly handled information from those swipes. *If* this case advances in this forum past the Court's Article III standing subject matter jurisdictional assessment, plaintiffs should be afforded jurisdictional discovery, not just to test defendants' CAFA jurisdictional theory, but also to gather the necessary evidence to satisfy their burden to show by a preponderance of that evidence that one or several of the exceptions to CAFA jurisdiction apply. *See, e.g., Mirmalek v. L.A. Times Commc'ns LLC*, No. 3:24-cv-01797-CRB, 2024 WL 2479940, 2024 U.S. Dist. LEXIS 92796, at *17 (N.D. Cal. May 23, 2024) ("Plaintiff has not proven the requisite citizenship status of the putative class. But jurisdictional discovery may fill this gap. Defendant might have records of Website users who might have been tracked while visiting the Website—that would shed light on the total size of the putative class and their citizenship at the time of removal.").

Plaintiffs have no desire to engage in a costly, time consuming, or fruitless jurisdictional battle just for the sake of putting defendants through their paces. However, it is important to ascertain whether jurisdiction is appropriate in this Court, especially where all parties are Oregon citizens and plaintiffs' sole claim is under Oregon law. Moreover, these CAFA jurisdictional disputes may very well be readily

avoided if the Court determines that it does not have subject matter jurisdiction under Article III, given defendants' failure to meet their burden to establish plaintiffs' standing based on the allegations, or lack thereof, in the complaint and the text of the private cause of action at issue.

## CONCLUSION

For these reasons, plaintiffs respectfully request an order remanding the case, and an order requiring payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal, especially in light of defendants' failure to voluntarily stipulate to either plaintiffs' standing or to remand after conferral.

September 29, 2024

**RESPECTFULLY FILED,**

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
Law Office of Kelly D. Jones
kellydonovanjones@gmail.com
Direct 503-847-4329

**CERTIFICATE OF SERVICE**

I certify that I caused this document to be served on all parties via the CM/ECF system.

September 29, 2024

<div style="margin-left:40%">

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiffs
Underdog Law Office
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

</div>